**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND E. ARNOLD, JR.** and | : | **CIVIL ACTION NO. 1:06-CV-1617** |
| **SANDRA L. ARNOLD,** | : | |
| **Plaintiffs** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **RED LION BOROUGH**, et al., | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are defendants' motions to dismiss (Docs. 25, 29)

the claims asserted by plaintiffs Raymond E. Arnold, Jr. ("Raymond") and Sandra

L. Arnold.  Defendants argue that:  (1) the court lacks subject matter jurisdiction

because plaintiffs have failed to exhaust their administrative remedies, and

(2) plaintiffs have failed to state a claim upon which relief can be granted.  For the

reasons that follow, the motions will be granted, and this case will be dismissed.

## I.    Factual Background[1]

The dispute in this case centers around the amount of pension benefits to

which Raymond is entitled because of his participation in a defined-benefit pension

plan offered by defendant Red Lion Borough ("Borough").  (Doc. 21 ¶¶ 5, 7-8.)  The

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint.  See infra Part II.  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

defendants are the Borough, five Borough Council members,[2] and the Pennsylvania State Association of Boroughs Municipal Retirement Trust ("PSAB MRT"), a non-profit entity that administers the Borough's pension plan.  (Id. ¶¶ 2-5.)

In 1977, Raymond began working for the Borough and elected to participate in its pension plan.  (Id. ¶¶ 6, 8.)  In April of 2005, Raymond began suffering from health problems and decided to seek an early retirement.[3]  (Id. ¶ 9.)  On May 17, 2005, Raymond met with the Borough's actuary regarding the impact of his proposed early retirement on his pension benefits.  (Id. ¶ 10.)  The actuary projected Raymond's pension benefits using a 2.0% pension benefits multiplier[4] and an early retirement date of January 1, 2006.  (Id.)  In the summer of 2005, Raymond negotiated with several members of the Borough Council Administration Committee ("the Committee") regarding his retirement package.  (Id. ¶ 12.)  Raymond and the Committee reached an agreement regarding his retirement

---

[2]  The defendant-Borough Council members are Jeffrey P. Herrman, Kristina G. Frutiger, Kandy L. Paules-Sowards, David W. McCabe, and Cynthia A. Barley. (Doc. 21 ¶ 3.)  All are sued in their individual and official capacities.  (Id.)

[3]  The court notes with interest that the position from which Raymond sought to retire was chief administrative officer of the Borough's pension fund.  (Doc. 25 ¶ 14.)

[4]  A pension benefits multiplier represents a percentage of an individual's yearly wages that, when multiplied times the number of years worked, equals his or her annual pension benefit.  See In re W.S. Dickey Clay Mfg. Co.- Local 4359 United Steelworkers of Am. Pension Plan, 720 F.2d 25, 26 (10th Cir. 1983).  At the time of the actuary's predictions, the pension benefits multiplier typically used by the Borough was 1.0%.  (Doc. 21 ¶ 11.)  On June 13, 2005, the Council voted to increase that multiplier from 1.0% to 1.18%.  (Id.; Doc. 25 ¶ 10.)

package, which Raymond alleges was calculated using a 2.0% multiplier and included his proposed early retirement date.  (Id. ¶ 14.)  Thereafter, the Committee requested that Raymond present the proposal to the entire Borough Council ("the Council").  (Id. ¶ 13.)  On September 12, 2005, Raymond alleges that the Council unanimously accepted the retirement package as proposed.[5]  (Id. ¶¶ 14-15.)

On October 28, 2005, the Borough's actuary notified Raymond that the initial pension projections had included an estimated salary for three years of service that Raymond had not actually performed.  (Id. ¶ 16.)  The actuary explained that the inclusion of these additional years of service could be rejected by the Pennsylvania Department of Auditor General and suggested that the projections be recalculated to eliminate this problem.  (Id. ¶¶ 17-18.)  The actuary then revised the projections to remove the three additional years of service.  In return, he increased the multiplier to 2.257% so that the resulting pension benefit would be identical to that previously approved by the Council.  (Id. ¶ 18.)  On November 3, 2005, the Council president executed a joinder agreement, which implemented Raymond's pension benefits as modified by the actuary.[6]  (Id. ¶¶ 19-20.)  Defendants deny that the

---

[5]  Defendants do not dispute that the Council voted to approve Raymond's pension proposal based upon his early retirement date of January 1, 2006. However, defendants deny that the pension proposal approved by the Council included a 2.0% multiplier.  (Doc. 25 ¶¶ 12-13.)

[6]  Specifically, the joinder agreement states that, from September 1, 2005 through May 31, 2006, "normal retirement age" means age sixty and benefits are calculated using a multiplier of 2.257%.  After May 31, 2006, "normal retirement age" means age sixty-five and benefits are calculated using a multiplier of 1.18%. (Doc. 27, Ex. B at 2-3.)

Council president was ever authorized by the Council to approve the joinder agreement.  (Doc. 25 ¶ 20.)

On January 1, 2006, Raymond retired.  (Doc. 21 ¶ 21.)  On January 18, 2006, Raymond received a benefit option election form from the Borough, which ratified his early retirement date and based his benefits calculation on a multiplier of 2.257%.  This was to result in a lump-sum distribution of $439,727.00.  (Id. ¶ 22.)  On January 26, 2006, Raymond selected the lump-sum option, executed the form, and returned it to the Borough.  (Id. ¶ 23.)  On the same day, defendant Council Member Jeffrey Herrman ("Herrman") signed the form on behalf of the Borough.[7]  (Id. ¶ 24.) The form was then forwarded to PSAB MRT, which received it on January 30, 2006. (Id.)

Sometime thereafter, the Borough defendants allegedly discovered that the joinder agreement contained a 2.257% multiplier, rather than the 1.18% multiplier typically used by the Borough.  (Doc. 25 ¶ 24.)  On February 20, 2006, defendant Council Member Kandy L. Paules-Sowards ("Paules-Sowards") made a motion to make the typical 1.18% multiplier retroactively applicable to all employee pension benefit plans approved since June 13, 2005.  (Doc. 21 ¶ 26.)  The motion passed unanimously.  (Id.)  Raymond alleges that Paules-Sowards' motion was ambiguous as to its applicability to his pension plan, while defendants allege that Paules-Sowards' motion was clearly intended to amend Raymond's pension calculations to

_____

[7] Defendants deny that Herrman was authorized by the Council to sign the form or to approve the use of a 2.257% multiplier.  (Doc. 25 ¶ 23.)

4

include a 1.18% multiplier.  (Id.; Doc. 25 ¶ 24.)  On March 13, 2006, defendant

Council Member Cynthia A. Barley made a motion to calculate Raymond's pension

benefits using the "correct multiplier."  (Doc. 21 ¶ 27.)  This motion also passed

unanimously.  (Id.)  Raymond also alleges that this motion was ambiguous as to the

multiplier to be applied when calculating his pension benefits, while defendants

allege that this motion was intended to authorize the actuary to recalculate

Raymond's benefits using a 1.18% multiplier.  (Id.; Doc. 25 ¶ 25.)

On March 14, 2006, the Borough solicitor advised Raymond that PSAB MRT

was not authorized to pay his pension benefits to the extent that such benefits were

based on a multiplier greater than 1.18%.  (Doc. 21 ¶ 28.)  On March 24, 2006,

Raymond received a modified benefit option election form from Borough, which

based his benefits calculation on a multiplier of 1.18%.  The modified election form

provided for a lump-sum distribution of $229,847.00.  (Id. ¶ 29.)

On April 10, 2006, a non-defendant Council member made a motion to honor

Raymond's pension benefits based upon a 2.0% multiplier.  The motion failed.  (Id.

¶ 30.)  On April 17, 2006, Raymond filed a notice of claim with PSAB MRT, believing

that entity to be the plan administrator.  Pursuant to the plan documents, the plan

administrator has ninety days in which to respond to such a claim.  (Id. ¶¶ 31-32.)

Raymond has yet to receive a response.  (Id. ¶ 35.)  On June 12, 2006, Raymond and

the Borough entered into a partial payment agreement that permitted PSAB MRT

to pay the undisputed pension amount to Raymond, pending resolution of the

disputed pension benefits.  (Id. ¶ 33; see also Doc. 27, Ex. C.)  The partial payment

agreement was sent to PSAB MRT on June 20, 2006, but PSAB MRT failed to pay Raymond the undisputed amount.[8] (Doc. 21 ¶¶ 34, 36.)

On August 18, 2006, plaintiffs filed the instant action, alleging that defendants deprived Raymond of his vested pension benefits in violation of his rights to substantive and procedural due process pursuant to the Fourteenth Amendment. (See Doc. 1; see also Doc. 21 ¶¶ 39-48.) Plaintiffs also assert the pendent state claims of breach of contract, tortious interference with contractual relations, and loss of consortium. (Id. ¶¶ 49-65.) Defendants filed the instant motions to dismiss, arguing that this court lacks subject matter jurisdiction over plaintiffs' claims and that plaintiffs have failed to state a claim upon which relief can be granted. (See Docs. 25, 29.) The motions have been fully briefed and are ripe for disposition.

## II.   **Standard of Review**

The instant motion is premised on both lack of subject matter jurisdiction and failure to state a claim; therefore, both standards of review are set forth below.

### A.   **Rule 12(b)(1) - Lack of Subject Matter Jurisdiction**

A motion to dismiss under Rule 12(b)(1) challenges the power of a federal court to hear a claim or case. Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). In the face of a 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006), cert denied, ___ U.S. ___, 127 S. Ct. 2098 (2007). Motions under

---

[8] As a consequence of the instant litigation, PSAB MRT has now paid Raymond $100,000.00 in partial payment of his pension benefits. (Doc. 25 at 8 n.3.)

12(b)(1) may take one of two forms.  A "facial" attack assumes the veracity of the allegations in the complaint but argues that the pleadings fail to present an action within the court's jurisdiction.  <u>Tolan v. United States</u>, 176 F.R.D. 507, 509 (E.D. Pa. 1998).  The court should grant such a motion only if it appears with certainty that assertion of jurisdiction would be improper.  <u>Id.</u>; <u>Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.</u>, 227 F.3d 62, 69 (3d Cir. 2000).  If the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal with prejudice.  <u>See</u> <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).  In contrast, a "factual" attack argues that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside of the court's jurisdiction.  <u>Tolan</u>, 176 F.R.D. at 510; <u>see also</u> <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).  In such circumstances, the court is both authorized and required to evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.  <u>Id.</u>; <u>Carpet Group</u>, 227 F.3d at 69.  Because the instant 12(b)(1) motion presents a facial attack on this court's subject matter jurisdiction, the former standard will be used.

### B.   <u>Rule 12(b)(6) - Failure to State a Claim</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Sershen v. Cholish</u>, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  <u>See</u> FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." <u>Montville Twp. v. Woodmont Builders LLC</u>, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting <u>Twombly</u>, ___ U.S. at ___, 127 S. Ct. at 1969).  Under this

8

liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane, 213 F.3d at 116-17.

## III.   Discussion

Defendants' motions present a facial challenge to subject matter jurisdiction under Rule 12(b)(1) and an objection to the sufficiency of the complaint under Rule 12(b)(6).  As dictated by the United States Supreme Court, the court must consider first the issue of subject matter jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94 (1998) (rejecting the "doctrine of hypothetical jurisdiction" and holding that courts are not permitted to "'assum[e]' jurisdiction for the purpose of deciding the merits"); see also Tolan, 176 F.R.D. at 509 (requiring court to address subject matter jurisdiction first because of mootness concerns).

### A.   Subject Matter Jurisdiction

Defendants argue that this court is without subject matter jurisdiction to entertain plaintiffs' claims because the pension benefits plan contains an administrative appeal procedure which plaintiffs failed to exhaust.  There is a "long settled rule" that a party is not "entitled to judicial relief . . . until the prescribed administrative remedy has been exhausted."  Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund, 693 F.2d 290, 293 (3d Cir. 1982) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938)).  In this case, the prescribed administrative remedy is as follows:

<u>Appeal Procedure</u> - Any person whose application for retirement benefits is denied, who questions the amount of benefit paid, who believes a benefit should have commenced which did not so commence or who has some other claim arising under the Plan ("Claimant"), shall first seek a resolution of such claim under the procedure hereinafter set forth.

(a)     Any Claimant shall file a Notice of the claim with the Plan Administrator which shall fully describe the nature of the claim.  The Plan Administrator shall review the claim and make an initial determination approving or denying the claim.

(b)     If the claim is denied in whole or in part, the Plan Administrator shall, within ninety (90) days . . . from the time the application is received, mail Notice of such denial to the Claimant. . . .

(c)     Upon receipt of Notice denying the claim, the Claimant shall have the right to request a full and fair review by the [Council] of the initial determination.  Such request for review must be made by Notice to the [Council] within sixty (60) days of receipt of such Notice of denial. . . . . . .

(f)     No decision hereunder is a final decision from which such an appeal may be taken until the entire appeal procedure of this section . . . has been exhausted.

(Doc. 27, Ex. A at 1-3.)  In sum, the plan documents set forth a three-step procedure that an individual must follow to exhaust his or her administrative remedies before seeking judicial intervention.  First, the individual must file a notice of claim with the plan administrator.  Second, the individual must receive a denial from the plan administrator within ninety days.  Third, the individual must seek review by the Council within sixty days.

In the instant case, Raymond claims that he began the exhaustion process by filing a notice of claim with PSAB MRT on April 17, 2006.  Defendants counter that Raymond's actions did not satisfy the plan's exhaustion requirements because PSAB MRT is not the plan administrator.  The question of exhaustion, therefore, turns on the identity of the plan administrator.  The plan documents define plan

administrator as "the Committee or the individual appointed by the [Council] who shall have the power and authority to do all acts and to execute, acknowledge and deliver all instruments necessary to implement and effectuate the purpose of this Plan." (Doc. 27, Ex. A at 1.)  The plan documents go on to explain that if a plan administrator is not appointed, "the [Council] shall be the Plan Administrator." (Id.)

According to both PSAB MRT and the Borough defendants, the Council never appointed a plan administrator, so the Council itself is the plan administrator.  (Doc. 28 at 9 n.5, 10; Doc. 29 ¶ 4; Doc. 30 at 5.)  According to Raymond, PSAB MRT was appointed the plan administrator by the Council on January 9, 2006.  (Doc. 32 at 13.)  In support of his position, Raymond provides the minutes from the January 9, 2006 Council meeting, which state:

> Council should approve a change in the pension plan administrator to improve efficiency and save money.  Mrs. Rinehart recommends changing the pension plan administrator to PSAB instead of going through an outside party.  Mr. Myers made motion to approve the change as discussed, which was seconded by Mrs. Frutiger.  All were in favor.  Motion carried.

(Doc. 32, Ex. A at 6.)  The court finds that this excerpt from the minutes of the Council meeting are insufficient to establish that PSAB MRT was appointed the plan administrator.  To the contrary, the minutes at most evidence a unilateral decision on the part of the Council to offer PSAB MRT the opportunity to become the plan administrator.  There is no evidence that PSAB MRT ever accepted such an offer or assumed the role of plan administrator.  In fact, both PSAB MRT and the Borough defendants specifically deny that PSAB MRT is currently or ever was

11

the plan administrator.  Because PSAB MRT is certainly in the best position to

know the contours of the duties and obligations it owes to the Borough, the court is

persuaded by PSAB MRT's denial that it served in the capacity of plan

administrator.  Accordingly, the court finds that the plan administrator is the

Council and that, because Raymond did not file a notice of claim with the Council

as required by the plan, he has failed to exhaust his administrative remedies.

Nevertheless, Raymond alleges that his failure to exhaust should be excused

as futile.  See Republic, 693 F.2d at 293-94 (excusing failure to exhaust in three

circumstances, including "when exhaustion would be futile").  The court disagrees.

When determining whether a failure to exhaust should be excused as futile, the

court should consider a number of factors, such as whether the plaintiff "diligently

pursued administrative relief" and whether the plaintiff "acted reasonably in

seeking immediate judicial review under the circumstances."  Lawson v.

Nationwide Mut. Ins. Co., No. 05-1249, 2005 WL 1533102, at *4 (E.D. Pa. June 29,

2005) (citing Harrow v. Prudential Ins. Co., 279 F.3d 244, 249 (3d Cir. 2002)).

In the instant case, Raymond erroneously filed a notice of claim with PSAB

MRT on April 17, 2006, which he believed to satisfy the first step of the plan's three-

step administrative exhaustion procedure.  Ten days later, Raymond received a

response from the Borough solicitor that was intended to highlight "erroneous

statements contained in [the notice of claim] letter."  (See Doc. 32, Ex. C.)  However,

Raymond did not receive a response from PSAB MRT, the entity which he believed

to be the plan administrator, within ninety days as required by the second step of

12

the administrative exhaustion procedure.  Although he received no response,

Raymond failed to take any action.  He contacted neither PSAB MRT nor the

Borough to determine why a denial had not been issued by PSAB MRT.  Instead,

Raymond circumvented this administrative procedure by filing the instant

litigation.  Under the circumstances, the court cannot find that Raymond diligently

pursued his administrative remedies or acted reasonably in pursuing immediate

judicial intervention.  See Lawson, 2005 WL 1533102, at *4.  Accordingly,

Raymond's failure to exhaust cannot be excused as futile and this court lacks

subject matter jurisdiction over plaintiffs' claims.

> **B.    Merits Issues**

While the court's finding regarding lack of subject matter jurisdiction

precludes it from reaching the merits of plaintiffs' claims, the court would be remiss

if it did not mention the obvious lack of a federal question inherent in the facts of

this case.  Because the Borough's pension plan is a "governmental plan," it does not

fall within the purview of the Employee Retirement Income Security Act of 1974

("ERISA").  See 29 U.S.C. § 1003(b)(1) (exempting "governmental plans" from the

scope of ERISA); see also id. § 1002(32) (defining "governmental plan" as "a plan

established or maintained for its employees by . . . the government of any State or

political subdivision thereof").  Having found no protection in ERISA, the plaintiffs

attempt to premise their request for federal relief on the substantive and procedural

due process principles of the Fourteenth Amendment.  Both of these claims are

inherently flawed for the reasons that follow.

13

To prevail on a procedural due process claim, a plaintiff must demonstrate that a liberty or property interest was taken in a procedurally deficient manner. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972); Henry v. Dept. of Correc., 131 F. App'x. 847, 848 (3d Cir. 2005). Before a plaintiff may successfully assert a procedural due process claim, the plaintiff must take "advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). In the action *sub judice*, Raymond failed to take advantage of the administrative appeals process set forth in the plan documents, which vitiates his procedural due process claim.

To state a substantive due process claim, a plaintiff must allege that the defendant engaged in conduct that is so irrational as to "shock[] the conscience." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003) (citing County of Sacramento v. Lewis, 523 U.S. 833, 844-45 (1998)). Substantive due process does not target government actions that are merely taken for an "improper purpose" or in "bad faith." See United Artists, 316 F.3d at 400-02; Corneal v. Jackson Twp., 313 F. Supp. 2d 457, 465-66 (M.D. Pa. 2003), aff'd, 94 F. App'x 76 (3d Cir.), cert. denied, 543 U.S. 871(2004). Rather, the doctrine constrains only those activities that have *no reasonable relation* to legitimate government objectives. Id. In the instant case, Raymond has not alleged any facts sufficient to establish that defendants' actions involved the type of egregious conduct against which substantive due process principles were intended to guard. Even viewing the allegations in the light most favorable to Raymond, the court would be unable to

14

conclude that defendants' actions bore *no reasonable relation* to the legitimate

government interest in properly administering the Borough pension plan.

**IV.** **Conclusion**

Because plaintiffs have failed to exhaust their administrative remedies, the

motions to dismiss (Docs. 25, 29) will be granted, and this case will be dismissed.  An

appropriate order will issue.

 /s/ Christopher C. Conner    
CHRISTOPHER C. CONNER
United States District Judge

Dated:        December 28, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND E. ARNOLD, JR.** and | : | **CIVIL ACTION NO. 1:06-CV-1617** |
| **SANDRA L. ARNOLD,** | : | |
| **Plaintiffs** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **RED LION BOROUGH**, et al., | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 28th day of December, 2007, upon consideration of defendants' motions to dismiss (Docs. 25, 29), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.   The motion to dismiss (Doc. 25), filed by defendants Jeffrey P. Herrman, Kristina G. Frutiger, Kandy L. Paules-Sowards, David W. McCabe, Cynthia A. Barley, and Red Lion Borough, is GRANTED.

2.   The motion to dismiss (Doc. 29), filed by defendant Pennsylvania State Association of Boroughs Municipal Retirement Trust, is GRANTED.

3.   Leave to amend is DENIED as futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

4.   The Clerk of Court is directed to CLOSE this case.


 /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge